

FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

2017 JUL 21 PM 4:16

CLERK'S OFFICE
AT BALTIMORE

BY_____ DEPUTY

**U.S. Department of Justice**

*United States Attorney*
*District of Maryland*

| | | |
|---|---|---|
| Leo J. Wise | Suite 400 | DIRECT: 410-209-4909 |
| Assistant United States Attorney | 36 S. Charles Street | MAIN: 410-209-4800 |
| Leo.Wise@usdoj.gov | Baltimore, MD 21201-3119 | FAX: 410-962-3091 |

June 9, 2017

Harvey Bruner, Esq.
Harvey B. Bruner Co. LPA
700 W St. Clair Ave., Suite 110
Cleveland, OH 44113

      Re:   *United States v. Evodio Hendrix*
              Criminal NO. JKB-17-0106

Dear Counsel:

      This letter, together with the Sealed Supplement, confirms the plea agreement which has been offered to the Defendant by the United States Attorney's Office for the District of Maryland ("this Office"). If the Defendant accepts this offer, please have him execute it in the spaces provided below. If this offer has not been accepted by June 16, 2017, it will be deemed withdrawn. The terms of the agreement are as follows:

Offense of Conviction

1. The Defendant agrees to plead guilty to Count One of the indictment now pending against him in *United States v. Gondo, et al*, Cr. No. JKB 17-106, charging him with racketeering conspiracy, in violation of 18 U.S.C. § 1962(d). The Defendant admits that he is, in fact, guilty of this offense and will so advise the Court.

2. The elements of the offense to which the Defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are as follows:

    a. First, that an enterprise existed as alleged in the indictment;

    b. Second, that the enterprise affected interstate or foreign commerce;

   c. Third, that the defendant was associated with or employed by the enterprise; and

   d. Fourth, that the defendant knowingly and willfully became a member of the conspiracy.

## Penalties

3. The maximum sentence provided by statute for the offense to which the Defendant is pleading guilty is as follows: a 20-year term of incarceration, 3 years of supervised release and a fine of not more than twice the gross proceeds derived from the offense. In addition, the Defendant must pay $100 as a special assessment pursuant to 18 U.S.C. § 3013, which will be due and should be paid at or before the time of sentencing. This Court may also order him to make restitution pursuant to 18 U.S.C. §§ 3663, 3663A, and 3664.[1] If a fine or restitution is imposed, it shall be payable immediately, unless, pursuant to 18 U.S.C. § 3572(d), the Court orders otherwise. The Defendant understands that if he serves a term of imprisonment, is released on supervised release, and then violates the conditions of his supervised release, his supervised release could be revoked - even on the last day of the term - and the Defendant could be returned to custody to serve another period of incarceration and a new term of supervised release. The Defendant understands that the Bureau of Prisons has sole discretion in designating the institution at which the Defendant will serve any term of imprisonment imposed.

## Waiver of Rights

4. The Defendant understands that by entering into this agreement, he surrenders certain rights as outlined below:

   a. If the Defendant had persisted in his plea of not guilty, he would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the Defendant, this Office, and the Court all agreed.

   b. If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community. Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count. The jury would be instructed that the

---

[1] Pursuant to 18 U.S.C. § 3612, if the Court imposes a fine in excess of $2,500 that remains unpaid 15 days after it is imposed, the Defendant shall be charged interest on that fine, unless the Court modifies the interest payment in accordance with 18 U.S.C. § 3612(f)(3).

Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

c. If the Defendant went to trial, the government would have the burden of proving the Defendant guilty beyond a reasonable doubt. The Defendant would have the right to confront and cross-examine the government's witnesses. The Defendant would not have to present any defense witnesses or evidence whatsoever. If the Defendant wanted to call witnesses in his defense, however, he would have the subpoena power of the Court to compel the witnesses to attend.

d. The Defendant would have the right to testify in his own defense if he so chose, and he would have the right to refuse to testify. If he chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from his decision not to testify.

e. If the Defendant were found guilty after a trial, he would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the charges against him. By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

f. By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph below, to appeal the sentence. By pleading guilty, the Defendant understands that he may have to answer the Court's questions both about the rights he is giving up and about the facts of his case. Any statements the Defendant makes during such a hearing would not be admissible against him during a trial except in a criminal proceeding for perjury or false statement.

g. If the Court accepts the Defendant's plea of guilty, there will be no further trial or proceeding of any kind, and the Court will find him guilty.

h. By pleading guilty, the Defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status.

i. The Defendant recognizes that if he is not a citizen of the United States, pleading guilty may have consequences with respect to his immigration status. Under federal law, conviction for a broad range of crimes can lead to adverse immigration consequences, including automatic removal from the United States. Removal and other immigration consequences are the subject of a separate proceeding, however, and the Defendant understands that no one, including his attorney or the Court, can predict with certainty the effect of a conviction on immigration status. Defendant

nevertheless affirms that he wants to plead guilty regardless of any potential immigration consequences.

## Advisory Sentencing Guidelines Apply

5. The Defendant understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. §§ 3551-3742 (excepting 18 U.S.C. §§ 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991 through 998. The Defendant further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

## Factual and Advisory Guidelines Stipulation

6. This Office and the Defendant understand, agree and stipulate to the Statement of Facts set forth in Attachment A hereto which this Office would prove beyond a reasonable doubt. In addition, Pursuant to U.S.S.G. § 1B1.2 the parties stipulate and agree that the guideline for robbery should be used to calculate the Defendant's advisory guideline calculation.

   a. Base Offense Level (U.S.S.G. § 2B3.1(a))                                    20

   b. Firearm Possessed (U.S.S.G. § 2B3.1(b)(2)(C))                               +5

   c. Physical Restraint To Facilitate Commission of Offense                       +2
      (U.S.S.G. § 2B3.1(b)(4)(B))

   d. Loss > $20,000 (U.S.S.G. § 2B3.1(b)(7)(B)                                   +1

The parties also agree to the following adjustments to the offense level based on the defendant's role in the offense

   a. Abuse of Position of Trust (U.S.S.G. § 3B1.3)                               +2

   b. Obstructing or Impeding the Administration of Justice                       +2
      (U.S.S.G. § 3C1.1)

                                                                    Subtotal      32

4

7. This Office does not oppose a two-level reduction in the Defendant's adjusted offense level, based upon the Defendant's apparent recognition and affirmative acceptance of personal responsibility for his criminal conduct.

8. This Office will make a motion pursuant to U.S.S.G. § 3E1.1(b) for an additional one-level decrease in recognition of the Defendant's timely notification of his intention to plead guilty.

9. This Office may oppose *any* adjustment for acceptance of responsibility if the Defendant (a) fails to admit each and every item in the factual stipulation; (b) denies involvement in the offense; (c) gives conflicting statements about his involvement in the offense; (d) is untruthful with the Court, this Office, or the United States Probation Office; (e) obstructs or attempts to obstruct justice prior to sentencing; (f) engages in any criminal conduct between the date of this agreement and the date of sentencing; or (g) attempts to withdraw his plea of guilty.

10. The Defendant understands that there is no agreement as to his criminal history or criminal history category, and that his criminal history could alter his offense level if he is a career offender or if the instant offense was a part of a pattern of criminal conduct from which he derived a substantial portion of his income.

11. This Office and the Defendant agree that with respect to the calculation of the advisory guidelines range, no other offense characteristics, sentencing guidelines factors, potential departures or adjustments set forth in the United States Sentencing Guidelines will be raised or are in dispute.

12. The Defendant and this Office have reserved the right to argue for any factor under 18 U.S.C. § 3553(a) that could take the sentence outside of the advisory guidelines range.

## Obligations of the United States Attorney's Office

13. At the time of sentencing, this Office will recommend a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in 18 U.S.C. § 3553(a).

14. The parties reserve the right to bring to the Court's attention at the time of sentencing, and the Court will be entitled to consider, all relevant information concerning the Defendant's background, character and conduct, including any uncharged conduct.

## Restitution

15. The Defendant agrees to the entry of a Restitution Order for the full amount of the victim's losses. The Defendant agrees that, pursuant to 18 U.S.C. §§ 3663 and 3663A and §§ 3563(b)(2) and 3583(d), the Court may order restitution of the full amount of the

5

actual, total loss caused by the offense conduct. The Defendant further agrees that he will fully disclose to the probation officer and to the Court, subject to the penalty of perjury, all information, including but not limited to copies of all relevant bank and financial records, regarding the current location and prior disposition of all funds obtained as a result of the criminal conduct set forth in the factual stipulation. The Defendant further agrees to take all reasonable steps to retrieve or repatriate any such funds and to make them available for restitution. If the Defendant does not fulfill this provision, it will be considered a material breach of this plea agreement, and this Office may seek to be relieved of its obligations under this agreement.

## Collection of Financial Obligations

16. The Defendant expressly authorizes the U.S. Attorney's Office to obtain a credit report in order to evaluate the Defendant's ability to satisfy any financial obligation imposed by the Court.

17. In order to facilitate the collection of financial obligations to be imposed in connection with this prosecution, the Defendant agrees to disclose fully all assets in which the Defendant has any interest or over which the Defendant exercises control, directly or indirectly, including those held by a spouse, nominee or other third party.

18. The Defendant will promptly submit a completed financial statement to the United States Attorney's Office, in a form this Office prescribes and as it directs. The Defendant promises that the financial statement and disclosures will be complete, accurate and truthful, and understands that any willful falsehood on the financial statement will be a separate crime and may be punished under 18 U.S.C. § 1001 by an additional five years' incarceration and fine.

## Waiver of Appeal

19. In exchange for the concessions made by this Office and the Defendant in this plea agreement, this Office and the Defendant waive their rights to appeal as follows:

    a. The Defendant knowingly waives all right, pursuant to 28 U.S.C. § 1291 or otherwise, to appeal the Defendant's conviction;

    b. The Defendant and this Office knowingly waive all right, pursuant to 18 U.S.C. § 3742 or otherwise, to appeal whatever sentence is imposed, including the right to appeal any issues that relate to the establishment of the advisory guidelines range, the determination of the defendant's criminal history, the weighing of the sentencing factors, and the decision whether to impose and the calculation of any term of imprisonment, fine, order of forfeiture, order of restitution, and term or condition of supervised.

   c. Nothing in this agreement shall be construed to prevent the Defendant or this Office from invoking the provisions of Federal Rule of Criminal Procedure 35(a), or from appealing from any decision thereunder, should a sentence be imposed that resulted from arithmetical, technical, or other clear error.

   d. The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above-captioned matter and agrees not to file any request for documents from this Office or any investigating agency.

### Obstruction or Other Violations of Law

20. The Defendant agrees that he will not commit any offense in violation of federal, state or local law between the date of this agreement and his sentencing in this case. In the event that the Defendant (i) engages in conduct after the date of this agreement which would justify a finding of obstruction of justice under U.S.S.G. § 3C1.1, or (ii) fails to accept personal responsibility for his conduct by failing to acknowledge his guilt to the probation officer who prepares the Presentence Report, or (iii) commits any offense in violation of federal, state or local law, then this Office will be relieved of its obligations to the Defendant as reflected in this agreement. Specifically, this Office will be free to argue sentencing guidelines factors other than those stipulated in this agreement, and it will also be free to make sentencing recommendations other than those set out in this agreement. As with any alleged breach of this agreement, this Office will bear the burden of convincing the Court of the Defendant's obstructive or unlawful behavior and/or failure to acknowledge personal responsibility by a preponderance of the evidence. The Defendant acknowledges that he may not withdraw his guilty plea because this Office is relieved of its obligations under the agreement pursuant to this paragraph.

### Court Not a Party

21. The Defendant expressly understands that the Court is not a party to this agreement. In the federal system, the sentence to be imposed is within the sole discretion of the Court. In particular, the Defendant understands that neither the United States Probation Office nor the Court is bound by the stipulation set forth above, and that the Court will, with the aid of the Presentence Report, determine the facts relevant to sentencing. The Defendant understands that the Court cannot rely exclusively upon the stipulation in ascertaining the factors relevant to the determination of sentence. Rather, in determining the factual basis for the sentence, the Court will consider the stipulation, together with the results of the presentence investigation, and any other relevant information. The Defendant understands that the Court is under no obligation to accept this Office's recommendations, and the Court has the power to impose a sentence up to and including the statutory maximum stated above. The Defendant understands that if the Court ascertains factors different from those contained in the stipulation set forth above, or if

the Court should impose any sentence up to the maximum established by statute, the Defendant cannot, for that reason alone, withdraw his guilty plea, and will remain bound to fulfill all of his obligations under this agreement. The Defendant understands that neither the prosecutor, his counsel, nor the Court can make a binding prediction, promise, or representation as to what guidelines range or sentence the Defendant will receive. The Defendant agrees that no one has made such a binding prediction or promise.

### Entire Agreement

22. This letter supersedes any prior understandings, promises, or conditions between this Office and the Defendant and, together with the Sealed Supplement, constitutes the complete plea agreement in this case. The Defendant acknowledges that there are no other agreements, promises, undertakings or understandings between the Defendant and this Office other than those set forth in this letter and the Sealed Supplement and none will be entered into unless in writing and signed by all parties.

If the Defendant fully accepts each and every term and condition of this agreement, please sign and have the Defendant sign the original and return it to me promptly.

Very truly yours,

Stephen M. Schenning
Acting United States Attorney

By: _____
Leo J. Wise
Derek E. Hines
Assistant United States Attorneys

   I have read this agreement, including the Sealed Supplement, and carefully reviewed every part of it with my attorney. I understand it, and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney, and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

_7-21-17_
Date

_[signature]_
Evodio Hendrix

   I am the Defendant's attorney. I have carefully reviewed every part of this agreement, including the Sealed Supplement, with him. He advises me that he understands and accepts its terms. To my knowledge, his decision to enter into this agreement is an informed and voluntary one.

_7-21-17_
Date

_[signature]_
Harvey Bruner, Esq.

9

## ATTACHMENT A
## STATEMENT OF FACTS

It is agreed and stipulated that were the Government to proceed to trial in this case, it would prove, beyond a reasonable doubt, by admissible testimonial and documentary evidence the guilt of the Defendant on the charges of racketeering conspiracy, in violation of 18 U.S.C. § 1962(d).

This Office and the Defendant understand, agree and stipulate to the following statement of facts and the Defendant acknowledges that it does not represent all the evidence the Government would have produced had the case proceeded to trial.

1. The Defendant, Evodio Hendrix ("HENDRIX"), joined the Baltimore Police Department ("BPD"), an agency of the State of Maryland whose jurisdiction covers Maryland's largest city, Baltimore, on April 2, 2009. The BPD constituted an "enterprise," as defined in Title 18, United States Code, Section 1961(4). The BPD engaged in, and its activities affected, interstate commerce.

2. The Gun Trace Task Force ("GTTF") was a specialized unit within the Operational Investigation Division of the BPD. The primary mission of the GTTF was the tracking and tracing of recovered firearms in order to identify and suppress the possession, purchasing, and trafficking of illegal firearms within Baltimore City, and to assist with the investigation and prosecution of firearms-related offenses.

3. HENDRIX was assigned to the GTTF on or about June 13, 2016.

4. The purpose of the BPD was to protect and preserve life, protect property, understand and serve the needs of the Baltimore City's neighborhoods, and to improve the quality of life in Baltimore City.

5. The purposes of HENDRIX and his co-defendants included violating the legitimate purposes of the BPD in order to enrich themselves through illegal conduct, including extortion, robbery and time and attendance fraud.

6. Among the means and methods by which HENDRIX and his co-defendants and others pursued their illegal purposes were the following:
    a. detaining individuals and stealing money, property and narcotics from them;
    b. entering residences and stealing money, property and narcotics from the owners and occupants of those residences;
    c. conducting traffic stops of vehicles and stealing money, property and narcotics from the vehicle occupants;
    d. swearing out false affidavits to obtain search warrants in order to steal money, property and narcotics;

    e. preparing false and fraudulent official incident and arrest reports, reports of property seized from arrestees and charging documents to conceal the fact that HENDRIX and his co-defendants stole money, property and narcotics from individuals; and

    f. defrauding the BPD and the State of Maryland by submitting false and fraudulent time and attendance records in order to obtain salary and overtime payments for times when HENDRIX and his co-defendants did not work.

7. HENDRIX agrees that he associated with the enterprise described in the indictment and knowingly became a member of the conspiracy described in the indictment.

### Robberies

8. HENDRIX admits that he participated in the robberies listed below, among others. Further, HENDRIX admits he was armed with his BPD service firearm during the commission of these robberies, that individual victims of the robberies were physically restrained to facilitate the commission of the offense, and that he authored false and fraudulent incident reports and other official documents in some cases in order to conceal his and his co-defendants' criminal conduct and otherwise obstruct justice.

    **a. March 22, 2016, Robbery of O.S.**

9. On or about March 22, 2016, HENDRIX, JENKINS, TAYLOR and WARD, acting in their capacity as police officers, conducted a traffic stop and arrested O.S.

10. Following the arrest of O.S., HENDRIX, JENKINS, TAYLOR and WARD entered O.S.'s residence. HENDRIX, JENKINS, TAYLOR and WARD stole approximately $200,000 from a safe they opened and from two bags they seized, and property, including a Breitling men's wristwatch, valued at $4,000, from the location.

11. Following the search, HENDRIX, JENKINS, TAYLOR and WARD went to TAYLOR's house where JENKINS gave WARD and HENDRIX and TAYLOR a portion of the money stolen from O.S. HENDRIX received approximately $20,000.

    **b. June 24, 2016, Robbery of M.M.**

12. On or about June 24, 2016, HENDRIX, GONDO, JENKINS and WARD, acting in their capacity as police officers, entered a residence where M.M. was staying with a SWAT team. When SWAT left, JENKINS, WARD and HENDRIX remained to execute a search warrant.

13. While HENDRIX and WARD were searching a bedroom, HENDRIX found a quantity of cash, which he stole.

14. Later that day, HENDRIX gave WARD a portion of the cash he stole from M.M.

### c. August 24, 2016, Robbery of A.F.

15. On or about August 24, 2016, WARD, JENKINS, GONDO, RAYAM, HENDRIX and HERSL, acting in their capacity as police officers, conducted a traffic stop of A.F. and detained him.

16. While A.F. was detained, HENDRIX stole cash from him.

17. HENDRIX later gave some of the cash that was taken from A.F. to WARD.

18. To conceal the robbery from authorities, WARD and HENDRIX did not prepare an incident report or Statement of Probable Cause regarding the traffic stop. HENDRIX and WARD did not submit to BPD the money they stole from A.F..

### Time and Attendance and Overtime Fraud

19. HENDRIX routinely submitted false and fraudulent individual overtime reports. On these reports, HENDRIX falsely certified that he worked his entire regularly assigned shift, when he did not, and that he worked additional hours for which he received overtime pay, when in truth and fact he had not worked all and in some cases any of those overtime hours.

20. HENDRIX engaged in these practices with the approval of and at the direction of his co-defendant Sergeant JENKINS. As of the officer-in-charge of the GTTF, and the unit that HENDRIX served in prior to joining the GTTF, JENKINS instructed HENDRIX and his co-defendants when to arrive for work, in many cases hours after his regular shift began, and also instructed HENDRIX and his co-defendants how much overtime to claim, including routinely directing them to claim more overtime than they had actually worked. This degree of coordination was necessary in order to conceal from BPD that the GTTF was overbilling for overtime. Specifically, it was necessary that members of the GTTF submit individual overtime reports for the same hours to create the illusion that HENDRIX and his co-defendants, who were working as a unit, where actually working.

21. HENDRIX submitted false and fraudulent overtime reports for himself and for his co-defendants who were members of the GTTF, with their knowledge and at their direction. His co-defendants also submitted false and fraudulent individual overtime reports, with his knowledge and at his direction, on his behalf. The practice at the GTTF was that if a sub-set of the GTTF had a gun arrest, all members of the GTTF,

regardless of whether they had actually participated in the arrest, would submit individual overtime reports, as if they did. On some occasions, this occurred when HENDRIX and his co-defendants were not working at all on the day of the arrest. In that circumstance, it was necessary for one of his co-defendants to submit the individual overtime report for HENDRIX, or for him to do it for one or more of them.

22. In submitting false and fraudulent individual overtime reports, HENDRIX acted with the intent to defraud the BPD and the citizens of the State of Maryland.